Argued and submitted March 7, judgment of Tax Court reversed
September 1, 2005

Rene C. and Cindy S. JULIAN,
*Appellants,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

(TC 4594; SC S51618 (Control))

John J. and Carol J. HOLLIDAY,
*Appellants,*

*v.*

DEPARTMENT OF REVENUE,
*Respondent.*

(TC 4595; SC S51619)

118 P3d 798

Larry R. Davidson, Portland, argued the cause and filed the briefs for appellants.

Jerry Bronner, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief was Hardy Myers, Attorney General.

DE MUNIZ, J.

## DE MUNIZ, J.

The issue in this tax case is whether Oregon Food Bank (OFB) qualifies as a "motor private carrier" under 49 USC section 13102(13) when it transfers food to members of a food-distribution network. If it does, then taxpayer, a driver for OFB who lives in Washington, is exempt from Oregon income tax. If not, then taxpayer must pay Oregon income taxes. The Oregon Tax Court decided that OFB does not qualify as a motor private carrier. *Julian v. Dept. of Rev.*, 17 OTR 384 (2004). Taxpayer appealed.[1] We agree with taxpayer and reverse.

We take the statement of facts from the decision of the Tax Court:

"During 1998 and 1999 taxpayers resided in Washington. Plaintiff Rene Julian (Julian) was employed as an interstate truck driver by [OFB], a private, nonprofit organization exempt from taxation under Internal Revenue Code (IRC) section 501(c)(3). Based in Portland, OFB is the coordinating agency for a network of 650 private, nonprofit agencies that serve hungry people in Oregon and Clark County, Washington. OFB collects food from various sources and then distributes that food to agencies in the network. OFB does not charge the agencies for the food it provides except for a flat-fee delivery charge of 14 cents per pound designed to recoup delivery costs. Agencies receiving donated food from OFB agree by contract that none of the products will be sold, traded or bartered and the products are tracked to ensure that they do not reenter the marketplace. OFB does not serve the public directly, instead, it is a central conduit for food donations that are then distributed to agencies that provide food directly to the poor and hungry.

"In his primary duty as a truck driver for OFB, Julian drove an 80,000 pound, 18-wheel truck, gathering donations and distributing them to other nonprofit agencies. Julian possessed a Class A Commercial Driver License during 1998 and 1999. Julian's work required weekly trips to

---

[1] The *Julian* proceeding and the *Holliday* proceeding were consolidated in the Tax Court and in this court. As we understand it, the facts in the *Holliday* proceeding are not materially different from those in *Julian*.

Washington, monthly trips to California and trips to Nevada and Idaho every other month.

"As a nonresident earning income in Oregon, Julian was subject to Oregon income tax on income attributable to his work in Oregon pursuant to ORS 316.127. Taxpayers claimed exemption pursuant to the Amtrak Act and the Department of Revenue (the department) subsequently issued a Notice of Deficiency on November 15, 2001 for the 1998 and 1999 tax years. The department issued a Notice of Tax Assessment on January 8, 2002. Both notices were premised on the department's position that taxpayers did not qualify for exemption under the Amtrak Act."

17 OTR at 386 (footnotes omitted). The parties filed cross-motions for summary judgment. The Tax Court concluded that "Congress in this instance did not draft the Amtrak Act to clearly include truck drivers in the particular situation of Julian, and this court declines to broaden the reach of the net that Congress cast." *Id.* at 400. The Tax Court therefore denied taxpayer's motion for summary judgment and granted the department's motion for summary judgment.

■ This court's scope of review of a tax court judgment is limited to questions of law. ORS 305.445.[2] On appeal, the court may affirm, modify, or reverse the order of the Tax Court, with or without remanding the case for further hearing, as justice may require. *Id.*

■ Resolution of this dispute turns on application of several federal tax statutes. In construing and applying a federal tax statute, federal law, rather than state law, governs. *Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 400, 908 P2d 308 (1995). Our task is to identify and carry out the intent of Congress when it enacted the statute in question. *Id.* In recognition of a state's power to tax in the absence of conflicting federal authority, federal law requires this court to read narrowly any federal exemptions preempting a state's power to tax, to avoid recognizing an exemption from state taxation that Congress did not express clearly. *See California*

---

[2] The actual wording of the statute is that "[t]he scope of the review * * * shall be limited to errors of law or questions of law or lack of substantial evidence in the record * * *." We use the shorthand description, "questions of law," because "substantial evidence" is itself a legal standard.

*Equalization Bd. v. Sierra Summit*, 490 US 844, 851-52, 109 S Ct 2228, 104 L Ed 2d 910 (1989) (so stating).

With the foregoing rules in mind, we apply the pertinent statutes. The first statute at issue provides:

> "No part of the compensation paid by a motor carrier * * * or by a *motor private carrier* to an employee who performs regularly assigned duties in 2 or more States as such an employee with respect to a motor vehicle shall be subject to the income tax laws of any State or subdivision of that State, other than the State or subdivision thereof of the employee's residence."

49 USC § 14503(a)(1) (emphasis added). The parties agree that taxpayer received compensation for driving in two or more states and that OFB regularly assigned such duties. The dispute thus centers on whether OFB qualifies as a "motor private carrier."

A second statute, 49 USC section 13102(13) defines the term "motor private carrier" as follows:

> "The term 'motor private carrier' means a person, other than a motor carrier, transporting property by motor vehicle when—
>
> "(A)  the transportation is as provided in section 13501 of this title;
>
> "(B)  the person is the owner, lessee, or bailee of the property being transported; and
>
> "(C)  the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise."[3]

Subsection (A) of 49 USC section 13102(13) indicates interstate transportation, and the parties do not dispute that reading. Further, the Tax Court found, and the parties do not dispute, that subsection (B) also is satisfied. *Julian*, 17 OTR

---

[3] 49 USC section 14503(a)(1) refers to both "motor carrier" and "motor private carrier." A "motor carrier" is "a person providing motor vehicle transportation for compensation." 49 USC § 13102(12). The difference is that a motor carrier is for hire to transport property, and a motor private carrier transports property for the purpose of selling that property. The Tax Court concluded that "OFB does not hold itself out as a transport for hire to the public and is not a motor carrier." 17 OTR at 392. We see no reason to disturb that conclusion.

at 393 ("The court agrees that the OFB is the owner, lessee, or bailee of the property being transported.").

The key issue in this dispute is whether "the property is being transported for sale, lease, rent, or bailment or to further a commercial enterprise" under 49 USC section 13102(13)(C). The Tax Court held that the transfer of food by OFB was not a sale, lease, rent, or bailment:

> "The food that OFB distributes is donated free of charge to OFB and distributed by it without charge. The only money changing hands is 14 cents per pound to defray the costs of delivery. The food is not for sale and in fact OFB tracks the food to ensure that it does not reenter the marketplace. OFB mandates that donated products will not be sold, traded or bartered. Based on these facts the court determines OFB does not transport property for sale, lease, rent or bailment."

17 OTR at 394. Having rejected the other possibilities (sale, lease, or rent), the Tax Court focused on the element of "further[ing] a 'commercial enterprise'" under 49 USC section 13102(13)(C) and concluded that no such enterprise existed under the circumstances of this case. *Id.* at 394-95.

■ We need not decide whether the Tax Court correctly determined that no commercial enterprise existed, because we conclude that the Tax Court erred in concluding that OFB's transfer of food does not qualify as a sale under 49 USC section 13102(13)(C). "'A sale, in the ordinary sense of the word, is a transfer of property for a fixed price in money or its equivalent.'" *Rogers v. Commissioner of Internal Revenue*, 103 F2d 790, 792 (9th Cir 1939) (quoting *Iowa v. McFarland*, 110 US 471, 478, 4 S Ct 210, 28 L Ed 198 (1884)); *see also Guardian Indus v. Comm'r*, 97 TC 308, 318 (1991) (relying on Uniform Commercial Code, § 2-106(1), in stating that a "'sale' consists of the passing of title from [seller] to [buyer] for a price").

Some ambiguity exists in this record regarding the ownership of the food when OFB carries and delivers it. If OFB owns the food when it has possession of it and then transfers the food to others for a price, then a transfer of title—and therefore a sale—takes place. That is true whether

the consideration paid is market-based or, as here, is calculated by reference to delivery costs and the weight of the food.

■     The Tax Court concluded that OFB is either the owner, lessee, or bailee of the food. 17 OTR at 393. The parties agree that those are the only choices regarding OFB's relationship to the food. The department argued that OFB was not a bailee of the food, and neither the record nor the parties suggest that OFB was leasing or renting the food before OFB delivered it. The only choice left is that OFB owns the food, and the department concedes that it does. The department itself asserts that "[t]he persons who transfer the food to the OFB release their ownership in the food to the OFB." Once donors give the food to OFB, OFB owns the food until OFB transfers the food to the food banks. We therefore conclude (as the department appears to concede) that OFB owns the food while transporting it and that OFB thereafter transfers its title in the food to others.

As noted, the record show that OFB transfers the food that it owns to the participating entities in the food network for 14 cents per pound.[4] That transfer qualifies as the passing of title from seller to buyer for a price; in other words, it is a sale.

We therefore conclude that the transfer of food in question is a sale under 49 USC section 13102(13)(C). As a result, OFB qualifies as a motor private carrier under 49 USC section 14503(a)(1), and taxpayer is exempt from Oregon income tax under 49 USC section 14503.

The judgment of the Tax Court is reversed.

---

[4] In our view, it is of no moment that the "price" is designed so that OFB recovers only certain costs. We are not concerned in this case with uses that OFB makes of the money that it receives for transferring its title in the food to others. It is enough that OFB receives something.