46 July 21, 2016 No. 49

IN THE SUPREME COURT OF THE
STATE OF OREGON

Stuart ETTER,
*Appellant,*
*v.*
DEPARTMENT OF REVENUE,
State of Oregon,
*Respondent.*
(TC 5027; SC S063061)

En Banc

On appeal from the Oregon Tax Court.*

Henry C. Breithaupt, Judge.

Argued and submitted March 8, 2016.

Gregory P. Bessert, The Bessert Law Firm, Battle Ground, Washington, argued the cause and filed the briefs for appellant.

Keith L. Kutler, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent. With him on the brief were Ellen F. Rosenblum, Attorney General, and Paul L. Smith, Deputy Solicitor General.

BALDWIN, J.

The judgment of the Tax Court is affirmed.

_____
* 22 OTR 18 (2015).

**BALDWIN, J.**

This direct tax appeal involves whether a Washington state resident who works in Oregon is exempt from individual Oregon income tax. Taxpayer is an aircraft dispatcher for Horizon Air Industries, Inc. (Horizon Air), who works almost entirely in Portland. To work as a dispatcher, however, he must spend five hours each year riding along in the cockpit for each aircraft group that he dispatches. Taxpayer argues that, pursuant to a federal statute—49 USC § 40116(f)—that flight time exempted him from paying Oregon income tax in the tax year 2000. The Tax Court concluded that taxpayer did not meet the requirements of the federal statute and denied his exemption. On appeal, taxpayer renews his arguments. We affirm.

The Tax Court ruled on the parties' cross-motions for summary judgment. The motions were based on stipulated facts, and taxpayer submitted a declaration in support of his motion. We present the facts and the inferences to be drawn from them in the light most favorable to taxpayer, the nonmoving party.[1] *See* TCR 47 C.[2]

Taxpayer is a Washington resident employed by Horizon Air as an aircraft dispatcher at Horizon Air's Portland operations center. His "primary and regular duties were to plan and monitor flights from Horizon Air's Portland operations center." Taxpayer's listed job duties did not involve

---

[1] The facts in the declaration may not be entirely consistent with the facts in the stipulation. For purposes of this opinion, we will not attempt to determine whether they are truly consistent, but will simply construe the facts in favor of taxpayer, regardless of their source.

[2] TCR 47 C provides in part:

"The court shall grant the motion [for summary judgment] if the pleadings, depositions, affidavits, declarations, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law. No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party on the matter that is the subject of the motion for summary judgment."

Unless otherwise noted, all references to statutes and administrative rules refer to the versions in effect for the year 2000, when taxpayer earned the income at issue. With regard to TCR 47, we refer to the version in effect for 2015 when the Tax Court granted summary judgment.

any flight time. He asserts, however, that Horizon Air would assign him other duties when they were necessary to comply with applicable law.

The Federal Aviation Administration (FAA) has promulgated an administrative rule that prohibits an air carrier from using a person as an aircraft dispatcher unless that person has met certain requirements. 14 CFR § 121.463. That rule requires (among other things) that dispatchers must familiarize themselves with flight deck operations on the planes that they dispatch by spending "at least 5 hours observing operations * * * in one of the types of airplanes in each group to be dispatched."

Taxpayer could choose the particular flight that would serve as his observational flight, and he did so in the tax year 2000. The parties stipulated that taxpayer did two observational flights that year, one for each of the two aircraft groups that he monitors. At least one of the flights that taxpayer chose flew over Oregon, Washington, Idaho, and Montana. Horizon Air paid taxpayer for his time in the air.

Taxpayer does not rely on any other out-of-state duties to support his claim to be exempt from taxation. Given the terms of the relevant federal regulation, taxpayer's total flight time would have been approximately 10 hours—five hours for each of the two aircraft groups. The parties stipulated that taxpayer's Oregon earnings were "greater than 50 [percent] of [his] total pay" during 2000. Ten hours would be 0.5 percent of the approximately 2,000 hours per year worked by a full-time employee.

Oregon taxes not only the income of residents, *see* ORS 316.037(1), but also the income of nonresidents that "is derived from sources within the state." ORS 316.037(3).[3] A nonresident's income is derived from sources within this

---

[3] ORS 316.037(1) imposes income taxes on residents. Subsection (3) applies those taxes to Oregon income paid to nonresidents:

"(3) A tax is imposed for each taxable year on the taxable income of every full-year nonresident that is derived from sources within this state. The amount of the tax shall be determined in accordance with the table set forth in subsection (1) of this section."

state if it is attributable to the nonresident carrying on an occupation here. *See* ORS 316.127(2)(b).[4]

Federal law limits the extent to which states may tax the income of certain employees of air carriers, however. 49 USC § 40116(f)(2) broadly provides that employees with "regularly assigned duties on aircraft in at least 2 States" may be taxed only by the state where they reside or a state in which they earn more than 50 percent of their pay from the air carrier.[5]

---

[4] ORS 316.127 provides in part:

"(2) Items of income, gain, loss and deduction derived from or connected with sources within this state are those items attributable to:

"*****

"(b) A business, trade, profession or occupation carried on in this state[.]"

[5] Specifically, that subsection provides:

"(f) Pay of Air Carrier Employees.—

"(1) In this subsection—

"(A) 'pay' means money received by an employee for services.

"(B) 'State' means a State of the United States, the District of Columbia, and a territory or possession of the United States.

"(C) an employee is deemed to have earned 50 percent of the employee's pay in a State or political subdivision of a State in which the scheduled flight time of the employee in the State or subdivision is more than 50 percent of the total scheduled flight time of the employee when employed during the calendar year.

"(2) The pay of an employee of an air carrier having regularly assigned duties on aircraft in at least 2 States is subject to the income tax laws of only the following:

"(A) the State or political subdivision of the State that is the residence of the employee.

"(B) the State or political subdivision of the State in which the employee earns more than 50 percent of the pay received by the employee from the carrier.

"(3) Compensation paid by an air carrier to an employee described in subsection (a) in connection with such employee's authorized leave or other authorized absence from regular duties on the carrier's aircraft in order to perform services on behalf of the employee's airline union shall be subject to the income tax laws of only the following:

"(A) The State or political subdivision of the State that is the residence of the employee.

"(B) The State or political subdivision of the State in which the employee's scheduled flight time would have been more than 50 percent of the employee's total scheduled flight time for the calendar year had the employee been engaged full time in the performance of regularly assigned duties on the carrier's aircraft."

As mentioned, FAA regulations require an airline dispatcher to spend at least five hours every year observing flight deck operations on the planes that they dispatch. The relevant regulation, 14 CFR § 121.463(c), provides in part:

> "No certificate holder conducting domestic or flag operations may use any person, nor may any person serve, as an aircraft dispatcher unless within the preceding 12 calendar months the aircraft dispatcher has satisfactorily completed operating familiarization consisting of at least 5 hours observing operations under this part, in one of the types of airplanes in each group to be dispatched. This observation shall be made from the flight deck or, for airplanes without an observer seat on the flight deck, from a forward passenger seat with headset or speaker. *** The requirement of this paragraph may be satisfied by observation of 5 hours of simulator training for each airplane group in one of the simulators approved under § 121.407 for the group."

In 2004, taxpayer sought (among other things) a refund for his 2000 taxes in the amount of $2,459.43. The department denied the claim for a refund, and taxpayer appealed to the Magistrate Division. The Magistrate Division ruled for the department. Taxpayer, the magistrate concluded, did not have regularly assigned duties on aircraft, and so he did not qualify under the statute.

Taxpayer appealed to the Regular Division of the Tax Court. Both parties moved for summary judgment, and the Tax Court granted the department's motion and denied taxpayer's motion. *Etter v. Dept. of Rev.*, 22 OTR 18, 22, 27 (2015). The court concluded that the general provision at issue—49 USC § 40116(f)(2)—had to be interpreted in context. *Id*. at 22. Part of that context was 49 USC § 40116(f)(3)(B), which identifies the states allowed to tax when employees were on authorized leave to engage in union duties. *See Etter*, 22 OTR at 23. For those employees, the statute framed the governing principle in terms of scheduled flight time across the entire year, allowing taxation by:

> "(B) The State or political subdivision of the State in which the employee's scheduled flight time would have been more than 50 percent of the employee's total scheduled flight time for the calendar year had the employee been

engaged full time in the performance of regularly assigned duties on the carrier's aircraft."

The union duties provision applies to only those employees who would ordinarily have scheduled flying over a full year, so the court concluded that the rest of the statute must also be so limited. *See Etter*, 22 OTR at 23-24. Therefore, the court held, the statute "only applies to members of an airplane crew of an air carrier who fly on a scheduled basis." *Id*. at 27. By contrast, taxpayer's schedule was to be on the ground in Portland, and his regular duties were to perform dispatching functions there. *Id*. at 24-25.

The Tax Court subsequently entered judgment against taxpayer. Taxpayer timely appealed to this court under ORS 305.445 (2013).

We review a decision of the Tax Court for "errors or questions of law or lack of substantial evidence in the record to support the tax court's decision or order." *Id*. In this case, the Tax Court ruled on the parties' summary judgment motions. The issue, therefore, is whether there was a genuine issue of material fact and whether one of the parties was entitled to judgment as a matter of law. *See* TCR 47 C.

In general, we consider whether actions are consistent with state law before examining consistency with federal law. *See State v. Sarich*, 352 Or 601, 617, 291 P3d 647 (2012) (so noting). Taxpayer makes no argument under state law that he is not liable for the tax owed, and none appears to be available. Therefore, the matter at issue here turns on the meaning of a federal statute. Accordingly, federal law governs its interpretation. *See, e.g.*, *Julian v. Dept. of Rev.*, 339 Or 232, 235, 118 P3d 798 (2005) ("In construing and applying a federal tax statute, federal law, rather than state law, governs." (Citations omitted.)). In interpreting a statute, the federal courts may examine the statute's text, its structure, and its legislative history. *See, e.g.*, *Dept. of Revenue of Or. v. ACF Industries*, 510 US 332, 339-46, 114 S Ct 843, 127 L Ed 2d 165 (1994) (examining text, structure, and legislative history of federal statute).

In this case, the parties dispute two provisions of the federal statute. The first issue involves whether the

statute applies to taxpayer at all: that is, whether taxpayer is an "employee of an air carrier having regularly assigned duties on aircraft in at least 2 States." 49 USC § 40116(f)(2). The second issue involves whether, if the statute applies, Oregon nevertheless may tax taxpayer's income: that is, whether Oregon is a state in which taxpayer "earns more than 50 percent of the pay received by [him] from the carrier" and so may tax taxpayer (who contends that the 50 percent rule counts income only from scheduled flight time). 49 USC § 40116(f)(2)(B). As we will explain, we conclude that taxpayer does not have "regularly assigned duties on aircraft." Therefore, we do not need to decide whether taxpayer earned more than "50 percent of the pay received by him" in Oregon.

With regard to the first issue, the parties agree that taxpayer is the employee of an air carrier. The dispositive issue is whether the observation flights required by FAA regulation qualify as "regularly assigned duties on aircraft in at least 2 States." 49 USC § 40116(f)(2).

We will assume for purposes of argument that observation flights qualify as "assigned duties." Even with that assumption, however, we must determine whether those duties are "regularly" assigned duties. Taxpayer asserts that "regularly" implies only that the duty occurs at regular but flexible intervals, and he contends that his two required flights each year qualify. The department maintains that there is no evidence that the observation flights have to be taken "in any uniform manner" except as needed to comply with the observation flight regulation.

We now turn to the text of the federal statute providing protection to a taxpayer who is an "employee of an air carrier having regularly assigned duties on aircraft in at least 2 States." 49 USC § 40116(f)(2). "Regularly" is an adverb meaning "in a regular, orderly, lawful, or methodical way : SYMMETRICALLY, CORRECTLY, PROPERLY." *Webster's Third New Int'l Dictionary* 1913 (unabridged ed 2002). The base word "regular" has a number of meanings, the following of which might apply in context:

> "3 a : steady or uniform in course, practice, or occurrence : not subject to unexplained or irrational variation

: steadily pursued **:** ORDERLY, METHODICAL <~ habits> b (1) **:** returning, recurring, or received at stated, fixed, or uniform intervals <a ~ income> <in the ~ course of events>[.]"

*Id.* "Regular" has as synonyms "normal," "typical," and "natural." *Id.*

Another source characterizes "regularly" as being "nearly synonymous" with "routinely." Bryan A. Garner, *A Dictionary of Modern American Usage* 565 (1998). Nevertheless,

"*regularly* implies a more orderly sequence at predictable intervals. <Karl regularly eats cereal for breakfast.> <Gillian routinely checks her car's oil and tires before taking a trip out of town.>"

*Id.* (emphasis in original).

"Regularly" thus has two aspects. One is quantitative and relates to the frequency that something happens. The other is qualitative and relates to the routine nature of the event. *See Kohring v. Ballard*, 355 Or 297, 304, 325 P3d 717 (2014) (noting that word "regular" has "two distinct senses, one connoting a particular quality of activity and the other connoting the frequency with which an activity occurs"). As the Court of Appeals has noted:

"The words 'regular' and 'regularly' have at least two different and distinct uses. An example of the first is 'Joe is a regular guy who behaves in a regular manner.' An example of the second is 'Joe is a regular consumer of American products.'"

*Burkhart v. Farmers Ins. Co.*, 144 Or App 594, 599, 927 P2d 1111 (1996).

As we stated in *Kohring*, "we examine word usage in context to determine which among competing definitions is the one that the legislature more likely intended." 355 Or at 304. In this case, "regularly" modifies "assigned duties." In context, that does not seem to focus on the time intervals between the duties being assigned. Instead, the focus appears to be on whether the assigned duties are normal, typical, or routine. The frequency with which a duty is assigned would affect whether the duty may be considered

normal, typical, or routine. An infrequent duty of short duration assigned twice in a year does not suggest a normal, typical, or routine assignment.

Here, as previously noted, taxpayer's "assigned duty" of flight time was approximately 10 hours for the subject tax year—five hours for each of the two aircraft groups. That duty represented 0.5 percent of taxpayer's annual work hours as a full-time employee. We do not regard such an infrequent and incidental requirement of short duration as normal, typical, or routine. Indeed, such a short amount of flight time could only reasonably be viewed as *de minimis*.

In support of taxpayer's contention that "regularly" means only that the duty occurs at regular but flexible intervals, he cites three cases: *Dept. of Rev. v. Hughes*, 15 OTR 316 (2001); *Butler v. Dept. of Rev.*, 14 OTR 195 (1997); and *Fink v. Commissioner of Revenue*, 71 Mass App Ct 677, 885 NE2d 859 (2008). Although those cases do not bind us and are not themselves evidence of congressional intent, we have considered them and do not find them persuasive. *Butler* and *Hughes* both involved 49 USC § 11504(b)(1), a parallel provision to the statute at issue here that limits the states that may tax employees of motor carriers who "perform[] regularly assigned duties in 2 or more States." *Fink* involved 49 USC § 11502, a similar provision for railroad employees. However, none of those cases provide a detailed explanation of the source or meaning of the term "regularly assigned duties" and, therefore, are not particularly helpful to our inquiry.

Taxpayer contends that the purpose of the federal statute was to protect *all* employees of air carriers against taxation. That contention, however, is directly inconsistent with the statutory text limiting the exemption to those employees with "regularly assigned duties" in two or more states. Simply by omitting "regularly assigned" from the statute, Congress could have extended the exemption to apply to all air carrier employees with any duties on aircraft in two or more states. Nevertheless, we turn to the legislative history to see whether it suggests a different conclusion.

The phrase "regularly assigned duties" was originally enacted into law by the Act of December 23, 1970, Pub L 91-569, § 4, 84 Stat 1499, 1502.[6] Senate Report 91-1261 explained that the purpose of that act was to relieve interstate carriers and some of their employees from burdens created by multiple state taxation. The report explained:

> "The problem addressed by this legislation is peculiar to those employees who are required by the nature of their employment to work in more than one State on a regular basis. Tax policies in some States have created great hardships both for interstate carriers and interstate carrier employees. Certain States have insisted upon withholding from employees an amount based upon the employee's entire annual income even though the portion of the employee's income derived from performance of duties within the State in question may have represented a very small proportion of his total income. *** It is no answer that at the end of the year a good portion of that money might be returned to the employee.

> "The employer is also confronted with serious problems. State withholding provisions typically require that the employer determine the amount of income earned by an employee in a particular State and that the employer take care of all other administrative details that are related to withholding. *** Where several States and numerous employees are involved, the administrative load can be extremely onerous for the employer.

> "However, withholding and the requirement of filing information returns with all of the jurisdictions asserting a right to tax any portion of the compensation of the employee are not the only problems. For the employee multiple State tax liability is itself a burden."

S Rep No 91-1261, 91st Cong, 2d Sess, *reprinted in* 1970 USCCAN 5039, 5039-40.

In the legislative history for Public Law 91-569, the only discussion that we have been able to locate regarding "regularly assigned duties" is the first sentence quoted above: The statement that the act was intended to address a problem

---

[6] The statute at issue here was later recodified without substantive change as 49 USC § 40116 by the Act of July 5, 1994, Pub L 103-272, § 1(e), 108 Stat 745, 1111. *See id.* §§ 1(a), 6(a) (both so noting).

"peculiar to those employees who are required by the nature of their employment to work in more than one State on a regular basis." While Congress was thus aware of the problems created for employees of interstate carriers such as air carriers, it apparently intended to protect only those employees who work "on a regular basis" in more than one state.

Thus, Congress may well have intended the statute to apply only to a very limited set of employees. "Regularly assigned duties," in that light, might mean only those persons who perform "some regularly assigned function on the vehicle." That could support the Tax Court's ultimate conclusion that the statutory exemption applied only to air crews.

However, we need not resolve that question in this case. While the legislative history indicates that Congress intended to protect some employees of interstate carriers against state income tax liability, that history also confirms that Congress did not intend to provide that protection to all employees of interstate carriers. It is not sufficient for the employee to perform some work in different states to be protected. The only employees who are protected are those whose *regularly* assigned duties require them to work in more than one state.

As we have already concluded, the term "regularly" indicates that the assigned duties must be normal, typical, or routine. The parties stipulated that taxpayer's "primary and regular duties" were on the ground in Oregon. His duty to complete the observation flight requirement was not a normal, typical, or routine duty. Taxpayer was not "required by the nature of [his] employment to work in more than one State on a regular basis." S Rep No 91-1261, 91st Cong, 2d Sess, *reprinted in* 1970 USCCAN 5039, 5039.

Thus, taxpayer did not qualify under 49 USC § 40116(f)(2) as an employee "having regularly assigned duties on aircraft in at least 2 States." There was no genuine issue of material fact, and the department was entitled to summary judgment against taxpayer as a matter of law. The Tax Court did not err in granting judgment for the department.

The judgment of the Tax Court is affirmed.