## IN THE TAX COURT OF THE STATE OF OREGON

Luther G. BUTLER
and Dorothy L. Butler

*v.*

## DEPARTMENT OF REVENUE

(TC 3873)

Marc K. Sellers, Schwabe, Williamson & Wyatt, Portland, represented plaintiffs (taxpayers).

Joseph P. Dunne, Assistant Attorney General, Department of Justice, Salem, represented defendant (department).

Decision for defendant rendered June 27, 1997.

### CARL N. BYERS, Judge.

Taxpayers, husband and wife, are residents of the state of Washington. They claim that income earned in Oregon by Luther, as a mechanic for an interstate trucking firm, is exempt from Oregon income tax under Public Law 101-322, the Amtrak Reauthorization and Improvement Act of 1990 (Amtrak Act). The Department of Revenue found that Luther was not an employee who performed regularly assigned duties in two or more states. Accordingly, it denied taxpayers' claimed refund for 1990 and assessed additional income taxes for 1991 and 1992.

## FACTS

During the relevant tax years, Luther was employed by Yellow Freight Systems, Inc., a less than full load intrastate and interstate trucking company. As a shop mechanic in the Portland terminal, he made safety inspections of trucks, trailers, and fork lifts and repaired windshields, doors, steering systems, and brakes. He also worked on drive trains and engines. Luther testified that the shop operates 24 hours a day, 7 days a week. Pursuant to a standing company policy, employees were to do whatever was necessary to keep the company trucks operating in a safe condition. Luther was often unsupervised and had been delegated the discretion to determine when parts needed replacing.

Luther testified that, in implementing the company policy, if he found it necessary to leave the shop to get parts, he did so. He does not have a clear recollection of trips made to Vancouver to pick up parts during the years in question. He estimates that he went to Vancouver three times each year to pick up parts. He admitted there was no established frequency to his trips because he went there only when there was an immediate need for a part. He testified that to obtain parts as quickly as possible, he would first check in Portland. However, sometimes he worked on Sundays or holidays and a parts store in Vancouver would be the only place open or that stocked the parts. Because of the time involved in traveling to get a part, those trips were normally only made in emergency situations. Luther also testified that he test drove a tractor to Vancouver to check the speedometer for repairs.

## THE LAW

█ The Amtrak Act exempts employees who perform regularly assigned duties in two or more states from state income taxes, except those taxes imposed by their state of residence. For purposes of this case, two federal statutory provisions are relevant. The first provides:

"No part of the compensation paid by a motor carrier * * * to an employee who performs regularly assigned duties in 2 or more States as such an employee with respect to a motor vehicle shall be subject to the income tax laws of any State or subdivision of that State, other than the State or subdivision thereof of the employee's residence." 49 USC § 11504(b)(1).

The second statutory provision defines "employee" as follows:

"(2) 'employee' means an operator of a commercial motor vehicle (including an independent contractor when operating a commercial motor vehicle), a mechanic, a freight handler, or an individual not an employer, who

"(A) directly affects commercial motor vehicle safety in the course of employment[.]" 49 USC § 31132.[1]

█ Congress intended to relieve employees of railroads and interstate trucking firms from income taxes that could be imposed if the employees earn part of their income while passing through a state. For example, a truck driver or train engineer might pass through several states during a single day, technically earning income in each of the states. That could subject those employees to burdensome filing requirements and conflicting claims for tax credits. The apparent purpose of the federal provisions was to relieve those employees of unreasonable burdens by limiting their tax obligations.

In the matter before the court, there is no significant dispute concerning the facts. The controversy centers on the meaning of the statute, particularly the phrase "performs regularly assigned duties in 2 or more States." To eliminate any doubt, the court specifically finds that Luther was an

---

[1] During the years in question, the definition of employee was set out in 49 USC § 2503. It was subsequently recodified at 49 USC § 31132.

employee within the meaning of section 31132. As a mechanic, in the course of his employment, he directly affected commercial motor vehicle safety. Replacing windshields and repairing brakes, steering systems, etc., all directly affect safety.

## ISSUE

The issue is whether Luther performed regularly assigned duties in two or more states during the years in question.

Taxpayers contend that "regularly assigned duties" does not mean that the duties must be performed regularly, only that they be regularly assigned. Taxpayers assert that the word "regularly" means normal, typical, or natural. Further, the nature of Luther's work and the extent or lack of supervision do not result in specific assignments, *i.e.*, his supervisor did not assign him to repair particular trucks, brakes, or windshields. Rather, Luther inspected trucks as they came in and had the discretion and authority to decide which repairs were needed and which parts needed replacing. Consequently, Luther contends that picking up parts to complete a repair job was part of his normal or regularly assigned duties. The company's standing order or policy was that, if it was necessary, the mechanic was to pick up parts from off the work site, whether it was from across the street or across the state line.

In opposition, the department contends that "regularly assigned duties" means duties assigned at fixed, regular intervals or on a regular basis. The department quotes a dictionary definition which states that "regular" means "reoccurring, attending, or functioning at fixed or uniform intervals." *Webster's Ninth New Collegiate Dictionary*, 992 (1987). The department submits that a mechanic who spends 99.9 percent of his work time in a Portland shop and travels out of state three times irregularly during the course of a year is not performing regularly assigned duties in two or more states. The department cites cases from other states construing the federal statute to mean that the assignments to perform in another state must be on a regular or scheduled basis. Those

cases hold that performing duties on an "on-call" or "as-needed" basis does not qualify. Likewise, random assignments to other states would not qualify.

## ANALYSIS

■   Because the statute at issue is a federal statute, any interpretation must be guided by the United States Supreme Court's principles of statutory construction. *See, e.g., Shaw v. PACC Health Plan, Inc.*, 322 Or 392, 400, 908 P2d 308 (1995); *see also North Pacific Ins. Co. v. Switzler*, 143 Or App 223, 228 n 4, 924 P2d 839 (1996).

Under the federal principles of construction, the court's function is to enforce the clear language of a statute according to its terms. *Rake v. Wade*, 508 US 464, 113 S Ct 2187, 124 L Ed 2d 424, 433 (1993). In determining the meaning of the statute, the court considers the text and context of the statute. *Conroy v. Aniskoff*, 507 US 511, 113 S Ct 1562, 123 L Ed 2d 229, 236 (1993). The court's objective is to discern the plain meaning of the whole statute, not isolated sentences. *Beecham v. United States*, 511 US 368, 114 S Ct 1669, 128 L Ed 2d 383, 388 (1994). The court is also guided by the object and policy of the statute. As the Supreme Court has stated:

> "[W]e examine first the language of the governing statute, guided not by 'a single sentence or member of a sentence, but look[ing] to the provisions of the whole law, and to its object and policy.'" *John Hancock Life Ins. v. Harris Bank*, 510 US 86, 114 S Ct 517, 126 L Ed 2d 524, 536 (1993).

After considering all of the facts, the court finds that Luther's regularly assigned duties were to inspect and repair trucks. The union contract requires mechanics to be able to use the technical bulletins and test equipment to diagnosis operating problems and make repairs. It also states that mechanics can be required to perform other job assignments. Luther testified that he worked on about 12 trucks per week. He also regularly inspected about 100 tractors or trailers per week.

■   The company policy is that employees are to do whatever is necessary to get a truck quickly repaired and back on the road. However, company policy is not an assigned duty.

Under that policy, an employee might be required to do something that others would normally do. For example, normally, someone else was regularly assigned to pick up parts or make them available to the mechanics. It appears this was usually done by outside vendors. However, the union contract provides that there is a specific job designated as "Pick-up and Delivery Stock and Parts." Picking up parts was not part of Luther's regularly assigned duties. He testified that it was unusual for him to go outside the terminal. He would pick up parts only in "emergency situations" and on an "as-needed" basis when others were not available. There was no established regularity to this action. The court was impressed with Luther's honesty when he testified that he traveled to Vancouver only about three times during a year. However, three possible trips to Vancouver to pick up parts is not a "normal," "usual," or "regularly assigned" duty.

The court notes that the statute implies that location may be part of the assignment. A truck driver who is regularly assigned to drive from Portland to Medford and back would not be exempt under the Amtrak Act if once or twice in a year, he was specially assigned to make a run to Spokane or Seattle. The phrase "regularly assigned" suggests that Congress intended to exclude "irregular," "unusual," or "special" assignments.

A mechanic could be regularly assigned to work at two different duty stations, each in a different state. Likewise, a mechanic might be regularly assigned to pick up parts or make repairs in two or more states. However, the court finds that the preponderance of the evidence indicates that Luther's regularly assigned duties required him to perform his services in the Portland terminal. Any actions he took as an employee outside the Portland terminal were not part of his regularly assigned duties. Accordingly, the Department of Revenue's Opinion and Order Nos. 94-4617 and 94-4618 must be sustained. Costs to neither party.