IN THE OREGON TAX COURT
MAGISTRATE DIVISION

Daniel S. SCOTT,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*Defendant.*

(TC-MD 970730)

Henry C. Breithaupt, Stoel Rives LLP, Portland, argued the cause for Plaintiff (taxpayer).

Jerry Bronner, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant (the department).

Decision rendered May 13, 1999.

## COYREEN R. WEIDNER, Magistrate.

Plaintiff appeals Defendant's assessment of personal income taxes for tax years 1987 through 1994. Plaintiff claims federal law exempts the income he earned in Oregon from taxation by the State of Oregon. A trial in the matter was held November 16, 1998, and the parties submitted their closing arguments by written memoranda. Henry C. Breithaupt, Attorney at Law, appeared on behalf of Plaintiff. Jerry Bronner, Assistant Attorney General, appeared on behalf of Defendant. For ease of reference herein, the parties are referred to as "taxpayer" and "the department."

### STATEMENT OF FACTS

During the tax years at issue, taxpayer was a resident of the State of Washington and employed by Horizon Air as a manager at its Portland base. From 1987 to March 1988, taxpayer was the Assistant Chief Pilot. As Assistant Chief Pilot, taxpayer supervised the line pilots and they reported to him. He also served as a Line Check Airman, the basic function of which was to conduct pilot training and proficiency checks. As a Line Check Airman, taxpayer was required to maintain his proficiency as a line pilot.

From March 1988 to April 1991, taxpayer was Horizon's Flight Operation's Project Manager. In April 1991, taxpayer's job title changed to that of Assistant Director of Flight Operations and he served in that capacity until March 1993. Although the job title changed, taxpayer testified that his duties remained the same. In that position, taxpayer reported directly to the Director of Flight Operations and his duties were to "direct development of new [minimum equipment lists], assist in putting new aircraft on line, help to cover duty officer position, etc."

From March 1993 through 1994, taxpayer was the Director of Flight Operations. The Flight Operations Manual describes the duties of that position as follows:

"The Director, Flight Operations is responsible to the Vice President, Flight Operations. He is responsible, and has the authority, to ensure that safety is made the first consideration in all operations and to maintain liaison with the FAA. The Director is responsible to ensure that all

flight operations are continuously in compliance with applicable Federal Aviation Regulations and all provisions of the National Transportation Safety Board regulations.

"The Director, Flight Operations will maintain the responsibility and the authority for operational control of flight operations as outlined in FARs 121 and 135. The Director, Flight Operations must know the contents of the Flight Operations Manual, Operations Specifications, and appropriate FARs. He must hold, or have held, an ATP certificate and must have had three (3) years PIC experience in large aircraft with an air carrier or commercial operator, or three (3) years experience as a Director, Flight Operations for an air carrier operating large aircraft."

Taxpayer testified that Horizon Air encourages its managers to maintain currency with their pilot licensing requirements and to fly routes during the year to facilitate understanding between management and line pilots. To be current with his pilot's license, federal law required taxpayer to conduct three takeoffs and landings every 90-day period. Those could occur in an airplane or a flight simulator. He also had to participate in ground training and undergo two proficiency checks annually, one line check annually, and additional line checks and training on new equipment.

During the subject years, taxpayer's currency on his license lapsed twice. The first was a four-month period during the last two months of 1991 and the first two months of 1992 when taxpayer had the flu. His medical certificate had been withdrawn because of his illness and he could not fly until it was reestablished. The second time his currency lapsed was in February 1993 until the beginning of 1994. Prior to February 1993, taxpayer's license pertained to the Dash 8 airplane. In February 1993, Horizon began the process of bringing in a new aircraft: the Dornay 328. No other air carrier in the United States had that plane. As a consequence, taxpayer was in charge of developing standards for the plane for the FAA and getting it certified for operation in the United States. Because taxpayer's focus was on the new airplane, his license currency for the Dash 8 lapsed.

Flight schedules at Horizon are determined on a five-week basis. Each manager will submit to the schedulers their schedules for the five-week period, setting forth when

they are not available to fly due to meetings, training, projects, etc. The full-time pilots are able to bid on the available lines and the trips are awarded based on seniority. Once the full-time pilots' schedules are established, management pilots are then assigned to any flights that remain uncovered.

For the years at issue, the parties submitted a chart setting forth taxpayer's flight time for each tax year. The hours per year are as follows:

| | |
|---|---|
| 1987: | 233.2 hours |
| 1988: | 147.1 hours |
| 1989: | 94.2 hours |
| 1990: | 32.3 hours |
| 1991: | 73.4 hours |
| 1992: | 98.9 hours |
| 1993: | 4.8 hours |
| 1994: | 67.9 hours |

Those hours are referred to as "block hours." A block hour "is an hour of actual flight time in an aircraft, including time spent on take-off and landing procedures." As taxpayer describes it, a block hour is the time from when the blocks are pulled away from the plane at departure until when the blocks are put into place at the destination point.

Taxpayer testified that block hours do not truly reflect the number of hours associated with a flight. He explained that, in conjunction with a flight, a pilot must, among other things, review weather checks and participate in post-flight briefings. In addition, there is dead time involved for layovers. Taxpayer testified that the total hours related to a flight (credit hours) is about three or four hours to every hour of block time.

The parties submitted examples of five-week flight schedules. The print-outs had taxpayer's flight schedule and various other pilot's schedules. For the period April 26 through May 30, 1992, taxpayer had 27.39 block hours and 68.55 total credit hours. The line pilots' credit hours ranged from 224 to 259.[1] For the period of September 13 through

---

[1] The court did not include the 147.3 hours for Scholz because he was on vacation a portion of this five-week period.

October 17, 1992, taxpayer had total credit hours of 22.55. The line pilots' credit hours ranged from 226.55 to 270.[2] Taxpayer testified that Horizon employed between 500 to 600 pilots and it had about 17 "manager pilots," which refers to managers who also fly planes on occasion.

Taxpayer contends the income he earned in Oregon is exempt from taxation by the State of Oregon under federal law, claiming he is an airline employee who performs regularly assigned duties on an aircraft in more than one state. The department disagrees claiming taxpayer is not entitled to the exemption because his primary duties were as a manager and not a pilot.

## ANALYSIS

Federal law exempts from income taxation an airline employee who performs regularly assigned duties on an aircraft in more than one state. The state of the employee's domicile is entitled to tax the individual. For tax years 1987 through 1994, the law provided, in pertinent part:

> "No part of the compensation paid by an air carrier to an employee who performs his regularly assigned duties as such an employee on an aircraft in more than one State, shall be subject to the income tax laws of any State or subdivision thereof other than the State or subdivision thereof of such employee's residence and the State or subdivision thereof in which such employee earns more than 50 per centum of the compensation paid by the carrier to such employee."

49 USC § 1512(a) (1993 App).[3]

The department denied taxpayer the exemption finding the statute was intended to apply to airline employees whose primary duties relate to working on an aircraft. The department found that taxpayer is primarily a manager who flies on occasion and, as a consequence, is not covered by the statute. Taxpayer claims he does not need to primarily be

---

[2] Again, the court did not include pilots Schneider (179.4 credit hours) or Scholz (118.05 credit hours) because they had leave time during this period.

[3] For tax year 1994, the law was repealed and replaced by 49 USC section 40116(f). No substantive changes were made to the law. Consequently, the court will refer to 49 USC section 1512 throughout this Decision.

a pilot to gain the benefit of the statute. Instead, he argues he must be regularly assigned to flying to fall within the statute, which he maintains is his situation.

■　　Because the court is construing a federal statute, it is guided by the principle that its object is to enforce the clear language of the statute, considering the text and context of the law. *See Butler v. Dept. of Rev.*, 14 OTR 195, 199 (1997). The language subject to dispute is the portion of the statute providing the exemption "to an employee who performs his regularly assigned duties as such an employee on an aircraft in more than one state." 49 USC § 1512(a) (1993 App).

　　The Regular Division of the Tax Court has previously construed what constitutes a "regularly assigned duty" under the Amtrak Reauthorization and Improvement Act of 1990 (Amtrak Act). *See Butler*, 14 OTR at 197. The Amtrak Act exempts employees of a motor carrier who perform regularly assigned duties in two or more states. The taxpayer in *Butler* was a shop mechanic at a Portland terminal. He claimed he was exempt because he would occasionally travel to Washington to pick up parts. The court found that, although taxpayer did pick up parts on occasion, the act of picking up parts was not his " 'normal,' 'usual,' or 'regularly assigned' duty." *Id*. at 200. The court looked for an "established regularity" of the act of picking up parts and could find none. *Id*.

■　　In this case, the statute exempts an airline employee who performs his regularly assigned duties **on an aircraft**. From 1987 to March 1988, taxpayer was the Assistant Chief Pilot. In that capacity, taxpayer was required to maintain his proficiency as a line pilot, and his block hours during that time demonstrate the regularity of his flying. Flying was a "normal" and "usual" part of taxpayer's job duties. The court, therefore, finds the federal law applied to taxpayer during that time period.

■　　From March 1988 through 1994, taxpayer's regular duties involved supervising others, providing training, building manuals, and implementing policies and procedures. Those duties were not performed on an aircraft in more than one state. Although taxpayer did fly during those years, there was no established regularity to the flights. Whether he flew

or not depended on his availability. His managerial duties came first and any extra time was made available for flights. Taxpayer was first a manager and second a pilot.

The court finds the law was intended to apply to those pilots whose regularly assigned duty is to fly an aircraft, *i.e.*, line-pilots. Simply because Horizon encourages its managers to maintain a current license and fly an occasional trip does not mean flying a plane is part of the manager's regularly assigned duties. *See Butler*, 14 OTR at 199 ("[C]ompany policy is not an assigned duty."). As mentioned, the occurrence of a flight is dependent on the manager's availability, with the managerial responsibilities taking precedence over flights. In addition, other than the Assistant Chief Pilot position, in none of the "duties and responsibilities" descriptions of taxpayer's positions was it mentioned that flying or working on a plane was part of the position.

## CONCLUSION

The court finds that flying or working on an airplane was not part of taxpayer's regularly assigned duties from March 1988 through 1994. As a result, taxpayer is not entitled to receive the benefits of 49 USC section 1512 for those years. The court further finds taxpayer is entitled to receive the benefits of the federal statute from 1987 until March 1988. Now, therefore;

IT IS THE DECISION OF THE COURT that taxpayer is entitled to receive the benefits of 49 USC section 1512 from 1987 to March 1988; and

IT IS FURTHER DECIDED that taxpayer is not entitled to receive the benefits of 49 USC section 1512 from March 1988 through 1994.