IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

| | | |
|---|---|---|
| CHAD A. NIEMELA<br>and MICHAELA M. NIEMELA, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | TC-MD 180091R |
| v. | ) <br> ) | |
| DEPARTMENT OF REVENUE,<br>State of Oregon, | ) <br> ) <br> ) <br> ) | |
| Defendant. | ) | **FINAL DECISION**[1] |

Plaintiffs appealed Defendant's Notice of Deficiency, dated December 20, 2017, for the

2014 tax year. A telephonic trial was held on August 2, 2018. Kevin Brown, CPA, represented

Plaintiffs. Chad Niemela (Niemela) testified on behalf of Plaintiffs. Stacie Rush appeared and

testified on behalf of Defendant. Plaintiffs' Exhibits 1 to 11 were admitted into evidence.

Defendant's Exhibits A to I were admitted into evidence.

## I. STATEMENT OF FACTS

During the 2014 tax year Niemela was a resident of Washington and employed by the

Port of Portland as a dredge boat engineer. For approximately half the year (May 28, 2014

through October 25, 2014) Niemela worked on dredges at various locations on the Columbia

River between Oregon and Washington. During dredging season, he worked aboard the dredge

on the Columbia River five days a week and often performed maintenance and other tasks for

several dredge boats docked on the Oregon shore during weekends. During the off-season he

performed maintenance and duties on the dredges while they were docked on the Willamette

---

[1] This Final Decision incorporates without change the court's Decision, entered April 11, 2019. The court did not receive a statement of costs and disbursements within 14 days after its Decision was entered. *See* Tax Court Rule–Magistrate Division (TCR–MD) 16 C(1).

River or in a dry dock in Portland.  Plaintiffs' 2014 Oregon tax return reported $32,381 in Oregon source wages based on the theory that part of Niemela's income during the dredging season was exempt from taxation in this state pursuant to 46 USC §11108(b) known as the "Waterway Exclusion Act."  (Ex F at 3, 6.)

During the dredging season, Niemela drove his personal vehicle from his home in Cathlamet, Washington, to various locations in Oregon and Washington where the dredging operations were ongoing and took a deduction of $17,682 for his travel miles.  Niemela testified that he kept a daily log of his miles, but did not include the log in the exhibits presented to the court.  Instead, Niemela presented a hand-written log of miles that was based on the employer's records of Niemela's specific work locations and activities along with an employer printout of his daily work pay, location, and activity codes.  Niemela's travel miles are as follows:

| Date from | Date to | location | miles / days | total |
|---|---|---|---|---|
| Jan. 1, 2014 | Jun 18, 2014 | Portland yard | 146.8 x 123 days | 18,056 |
| Jun 19, 2014 | Aug 4, 2014 | Vista | 22.4 x 47 days | 1,053 |
| Aug 5, 2014 | Aug 13, 2014 | Bradwood | 124.4 x 9 days | 1,120 |
| Aug 14. 2014 | Sept 11. 2014 | Willowgrove | 44.6 x 29 days | 1,293 |
| Sept 12, 2014 | Nov 7, 2014 | Tongue Point | 114.6 x 57 days | 6,532 |
| Nov 8, 2014 | Nov 30, 2014 | Woodland | 97.2 x 16 days | 1,555 |
| Dec 1, 2014 | Dec 31, 2014 | [unreadable] | 63.4 x 31 days | 1,965 |

Rush testified that she is employed by Defendant and conducted the audit of Plaintiffs' 2014 Oregon return.  She testified that only wages Niemela earned while he was aboard a vessel operating in the navigable waters of more than one state (*i.e.*, the Columbia River) were exempt from Oregon taxation.  She testified that the remainder of his earnings were not exempt.  She

testified that it was difficult to determine what work Niemela performed on a daily basis. Using a summary of work locations and pay codes provided by Niemela's employer, she determined that he was primarily on the dredge on weekdays during the dredging season and exempted those wages from Niemela's Oregon income. She further determined that Niemela's work on weekends during the dredging season consisted of performing maintenance and other tasks on the dredges while they were docked on the Oregon side of the Columbia River and were not exempt. She testified that there was no risk of duplication of taxes as it was clear Niemela worked on the Oregon side of the river on weekends. Rush created a spreadsheet of Niemela's daily work during the dredge season and added the hours he worked on weekends during the dredging season along with his off-season dry dock work, and increased Niemela's Oregon source wages to $75,140. (Ex C at 1, 2.)

Rush testified that she denied Niemela's travel expenses because he did not provide a mileage log and did not substantiate the travel. (Ex H at 24.) Additionally, Rush found Niemela did not show that any temporary work locations he traveled to were outside his "normal metropolitan area." (*Id*. citing Rev Rul 99-7.)

## II. ANALYSIS

The primary issue in the case is whether Niemela's earnings from work he performed as a dredge boat engineer are exempt from Oregon income tax. Defendant's position is that ORS 316.127(10)[2] and 46 USC §11108(b), the Waterway Exclusion Act, only exempt income that Niemela earned while he was actively operating a dredge on the Columbia River and all other work he performed in Oregon was taxable by this state. Plaintiffs' position is that only wages earned while he was at dry dock in Oregon are taxable in this state and the remaining

---

[2] The court's references to the Oregon Revised Statutes (ORS) are to 2013.

wages, even when the dredge was docked on the Oregon side of the Columbia River, are exempt from taxation in this state by the Waterway Exclusion Act. A secondary issue in this case is whether Niemela is entitled to a deduction for miles he drove from his home to the Portland Yard and various work locations along the Columbia and Willamette rivers.

Oregon generally imposes a tax upon the income of nonresidents earned from Oregon sources. ORS 316.127. The Commerce Clause of the United States Constitution empowers Congress to limit states from taxing the income of interstate workers. US Const, Art 1, § 8. Congress has done so in several instances, limiting the power of states to tax the income of nonresidents such as railroad carriers (49 USC § 11502); motor carriers (49 USC § 14503), and waterway workers (46 USC § 11108). Under those statutes, qualifying employees who perform regularly assigned duties in more than one state may only be taxed in their state of residence. *Id.* The statutes were adopted to relieve both employers and employees from the burden of paying, respectively, employment and income taxes in multiple states. S Rep No 91–1261, 91st Cong, (1970) 5039–40 (discussing multiple state tax withholding burden on both employers and employees); *see Butler v. Dept. of Rev.,* 14 OTR 195 (1997); *Etter v. Dept. of Rev.*, 360 Or 46, 52, 377 P3d 561 (2016).

The primary issue in this case turns on the meaning of a federal statute. "In construing and applying a federal tax statute, federal law, rather than state law, governs." *Etter 360* Or at 52. (citations omitted). "In interpreting a statute, the federal courts may examine the statute's text, its structure, and its legislative history. *See, e.g.*, *Dept. of Revenue of Or. v. ACF Industries*, 510 US 332, 339–46, 114 S Ct 843, 127 L Ed 2d 165 (1994) (examining text, structure, and legislative history of federal statute)." *Id*. Thus, the court will start with the federal legislative history to assist in interpreting the Waterway Exclusion Act.

A.      *Early History of the Waterway Exclusion Act 46 USC § 11108(b)*

During the 106th Congress, nearly identical bills were introduced in the House and Senate to "to provide equitable treatment with respect to State and local income taxes for certain individuals who perform duties on vessels."[3]  *See* Transportation Employee Fair Taxation Act of 1999, HR 1293, 106th Cong (1999); Vessel Worker Tax Fairness Act, S 893, 106th Cong (1999). As explained by the House Report on HR 1293, the bills were:

> "designed to clarify the taxing status of certain types of interstate waterway workers, which under current law is ambiguous.  This uncertainty in taxing status allows States to tax the income of interstate waterway workers in a worker's State of residence and in any State in which the worker earns 50 percent or more of his or her annual income.  H.R. 1293 resolves this ambiguity by prohibiting any State from taxing the income of a nonresident interstate waterway worker."

HR Rep No 927(I), 106th Cong, 2d Sess, 1-2 (2000).

Congressional reports and statements by legislators show that members of Congress were concerned that interstate waterway workers could face income taxation in multiple states, a problem Congress had already addressed for other interstate transportation workers through various pieces of legislation.  *See, e.g.*, 49 USC § 14503 (the Amtrak Act); *see also Julian v. Dept. of Rev.,* 17 OTR 384, 389–91 (2004), *rev'd,* 339 Or 232, 118 P3d 798 (2005) (discussing the history of the Amtrak Act and related statutes).  Representative Baird's statements upon introducing HR 1293 illustrate those concerns:

> "I am deeply concerned that a significant number of interstate waterway employees who are employed on vessels that operate on the Columbia River, the Mississippi, the Ohio, the Missouri, the Kanawha, and many other inland waterways throughout this Nation may be double or even triple-taxed for their labor.  These river pilots, officers and other crew members perform most of their work on rivers which flow through multiple States, and in many cases these folks are subject to income tax filings and additional withholdings from multiple States.
> "* * * * *

---

[3] A key difference between the two bills was that the House bill referred to "wages and employment" while the Senate version referred to "compensation for the performance of duties."

"When truck drivers, railway workers and aviation employees go about their jobs, all of whom are required to conduct their work in States other than their home State, Congress has seen fit to grant them an exemption from this double or triple taxation unless a majority of the work is performed in another State.
"* * * * *
"My bill will expressly prohibit the taxation of income earned by waterway workers by States other than the ones in which the workers reside. It will close the unfortunate loophole that says we treat all the other groups of interstate workers one way and bargemen and river pilots the other."

145 Cong Rec H1791-09, 1999 WL 162877 (Mar 25, 1999).

A similar sentiment was voiced by Representative Bono:

"Through a patchwork of legislation spanning nearly three decades, Congress has exempted interstate rail, motor, and air carriers from having to pay income taxes in more than one State by making the income of these workers taxable only in the worker's State of residence. While these workers have escaped the onerous burden of multiple taxation, Congress has failed to provide similar relief to interstate water workers.
"* * * * *
"In response to this problem, [HR 1293] would exempt interstate waterway workers from multiple State income taxation."

146 Cong Rec H10633, 2000 WL 1585880 (Oct 24, 2000).

The statements of Senator McCain also echoed these concerns:

"S. 893 declares individuals engaged on a vessel to perform assigned duties in more than one State to be exempt from income taxation laws of States or political subdivisions of which that individual is not a resident.

"While the Interstate Commerce Act exempts truck drivers, airline pilots, and railroad employees from being taxed by state and local jurisdictions in which they do not reside, it does not recognize merchant mariners who operate vessels in more than one state. It is time we correct this oversight and afford merchant mariners the same tax treatment similar transport operators are provided due to the interstate nature of their business.

"By passing this measure today, we will be providing much needed relief to merchant mariners. Under existing law, water transportation workers, including marine pilots, tow and tugboat workers and others who work aboard vessels are often subjected to filing and tax requirements by states other than their state of residence leading to possible double taxation. I do not believe that double

/ / /

FINAL DECISION  TC-MD 180091R

6

taxation is what Congress intended for any transportation worker when it crafted the Interstate Commerce Act. By passing S. 893 today, we can make that intent reality."

146 Cong Rec S9553, 2000 WL 1434392 (Sept 28, 2000).

Washington Senator Gorton provided the following to specifically address taxation of residents of his state by Oregon:

"This matter came to my attention through a series of constituent letters from Columbia River tug boat operators who are currently facing taxation from Oregon as well as Washington state. I am committed to pursuing this avenue of relief for my constituents, as well as hard working tug boat operators across the nation."

145 Cong Rec S4257-02, 1999 WL 245564

Congress also understood that tracking employees' locations across multiple jurisdictions created an administrative burden for interstate workers and their employers, which added to the ambiguity in waterway workers' tax status. *See* HR Rep No 927(I), 2000 WL 1471522 at *3–4 ("This lack of taxing clarity is compounded by the monitoring and reporting difficulties that underlie the proper apportionment of income earned while navigating waterways that delineate interstate boundaries."). Congress was aware that these problems were especially acute on the Columbia River.

"Oregon levies a broad based tax on personal income, while Washington does not. Over the last several years, Washington residents who work on the Columbia River as riverport pilots and barge operators have unexpectedly received tax assessments of hundreds of thousands of dollars in back taxes by Oregon taxing authorities. Since interstate water carriers along the Columbia River are unable to precisely ascertain how much time their workers spend in Oregon waters, Oregon taxing authorities have assumed that these workers spend half their time in Oregon and are thus taxable under the 50 Percent Rule."

*Id.* at 4 (footnote omitted).

In summary, the legislative history of HR 1293 and S893 demonstrate that Congress intended to put interstate waterway workers on the same footing as other interstate transportation

workers by generally exempting them from taxation in states other than their state of residence. The Senate bill (S 893) became law on November 9, 2000.  PL 106-489 11 Stat 2207 (2000).

B.      *Oregon Cases, Statutes, and Administrative Rules after PL 106-489*

In 2001, the Oregon Legislature added the protections of section 11108(b) into Oregon law.  *See* Ch 77 Or Laws § 1 (codified as ORS 316.127(10)).  The text of ORS 316.127(10), to a significant degree, mirrors the text of section 11108(b)(2) as originally enacted.  Moreover, OAR 150-316-0185 now provides that Oregon "imposes taxes on Oregon source income of nonresidents to the extent allowed under Oregon and federal law and exempts Oregon source income of nonresidents to the extent provided under federal law: 46 USCA 11108."  Both statutes should therefore be understood as providing the same protections to nonresident waterway workers.

Only two Oregon Tax Court cases have closely examined section 11108(b) or ORS 316.127(10).[4]  The first case was *Davis v. Department of Revenue,* TC-MD 030062E, WL 22908839 (Or Tax M Div Nov 25, 2003).  In *Davis*, the taxpayer was a resident of Washington who worked for a stevedoring company, working on vessels while they were docked in Oregon and in Washington.  The court focused its analyses on the use of the word "operating" in ORS 316.127(10) and concluded that because " 'operating' is an action word * * * the legislature intended the vessels be moving rather than sitting idle."  *Davis*, 2003 WL 22908839 at * 2.  The court concluded the work the taxpayer performed while the vessels were docked did not qualify for exemption.  *Id.*  In support of that conclusion, the court opined that the purpose of the statute was to alleviate the hardship of determining when a vessel was operating on the

---

[4] A third case, *Mendoza v. Dept. of Rev.*, TC-MD 150516C, WL 4925101 (Or Tax M Div, Sept 14, 2016), also examined that issue, but to a lesser extent.

Oregon or Washington side of the Columbia River. Because the vessels the taxpayer worked on were docked on one side of the river or the other, the court concluded that there was no uncertainty as to where the ships were located and, therefore, the exemption did not apply. *Id.*

In the second case, *Espinoza v. Department of Revenue*, the taxpayer, a Washington resident, was a merchant mariner who worked on a vessel in Oregon and California during the tax year. TC-MD 050768B, WL 2992948 (Or Tax M Div, Oct 19, 2006). At issue was whether the time the taxpayer spent in Oregon ports or on the Willamette River qualified for exemption. The court first applied the reasoning of *Davis* and concluded that the exemption did not apply because the taxpayer was unquestionably in Oregon while the vessel was docked in an Oregon port or while traveling on the Willamette River. *Id.* at *2. Turning to section 11108(b), the court in *Espinoza* noted its similarity to other federal statutes pertaining to interstate transportation workers, particularly the Amtrak Act (49 USC §14503). *Id.* at *3. Comparing the two statutes, the court observed that the text of the Amtrak Act exempted workers with regularly assigned duties " '*in* 2 or more states' " while section 11108(b) referred to " 'operat[tion] on the navigable waters *of* more than one state.' " *Id.* (emphasis and alteration in *Espinoza*). Reasoning that because "of" and "in" have different meanings, the court concluded that section 11108(b) only applied while a vessel was operating on waters belonging to more than one state, like the Columbia River, but not on purely intrastate waters, like Oregon coastal ports and the Willamette River. *Id.* at *3–4.

The upshot of *Davis* and *Espionza* is that the exemptions of ORS 316.127(10) and section11108(b) were deemed to only apply to vessels that were actively operating in waters that belonged to more than one state. OAR 150-316.127(10) (2013), promulgated after *Espinoza*, is illustrative. OAR 150-316.127(10)(1) stated that "only the Columbia and the Snake rivers are

navigable waters of more than one state." Under that theory, unless the vessel was actively "operating" on the Columbia or Snake rivers, the exemption did not apply. For instance, the rule provided the example of "Kirk," a nonresident working on board "a vessel plying the Columbia River. He works half of each day on the vessel between Rainier and Portland and the other half on the docks of the Oregon shore." OAR 150-316.127(10), Example 2 (2013). The example stated that Kirk should only be allowed the exemption for the time the vessel was on the Columbia, not docked in Oregon. *Id.* Another example provided that "Remy," whose vessel traveled from Hood River to Tualatin on the Willamette and Columbia rivers, would only be exempt for the time he spent on the Columbia; he would therefore be required to apportion his income accordingly. *Id.*, Example 3.

C.      *2010 Amendment to Section 11108(b)*

The court in *Davis* and *Espinoza* centered its analysis on one of the rationales underlying the creation of section 11108(b): the administrative difficulties of tracking the location of waterway workers as their vessels moved between states. However, the court did not consider that Congress's primary goal was to protect workers from the burdens of multi-state taxation by providing an exemption to waterway workers similar to exemptions provided for other interstate transportation workers. Regardless of whether those cases were correctly decided at the time, Congress subsequently amended section 11108(b), and in doing so, expressly abrogated *Espinoza* and undermined the rationale articulated in *Davis*.

In 2010, language amending section 11108(b)(2)(B) was included in a larger funding bill for the Coast Guard. Coast Guard Authorization Act of 2010, PL 111-281, § 906, 124 Stat 290 (2010). The amendment replaced the phrase "operating on the navigable waters of more than

/ / /

one State" with "operating on navigable waters in 2 or more states." *See id.* That change was in

response to *Espinoza*. As Representative Baird[5] explained:"

> "[I]ncluded in this bill is language clarifying the rule related to the taxation of interstate waterway workers. In an effort to address an unfair tax situation of waterway workers, whose jobs require them to work in multiple States, I authored legislation in the 106th Congress called the Transportation Employment Fair Taxation Act. This legislation barred States from taxing a nonresident waterway worker who performs regularly assigned duties while engaged as a master, officer or crewman on a vessel operating on the navigable waters of more than one State.

> "As the House report for this legislation stated, the purpose of this legislation was to prohibit any State from taxing the income of a nonresident interstate waterway worker. The Senate version of this legislation was signed into law on November 9, 2000.

> "Unfortunately, a 2006 decision by one State's tax court is wholly inconsistent with the intent of the 2000 law. Due to the use of the word 'of' instead of 'in,' the court believes it only applies to the waterways that are owned jointly by more than one State. This was clearly not the intent of the 2000 law. The legislative history and Congressional Record make clear it was not the intent of the law, and I happen to know a little about that intent because I authored the legislation.

> "This legislation today makes a slight wording change to clarify that the law is intended to apply to all interstate waterway workers on all waterways. It is my sincere hope that this minor change will make clear that States are prohibited from taxing the income of a nonresident interstate waterway worker, period. I want to make clear that this was the intent of the law I authored in 2000, and this legislation before us today will reinforce that congressional intent."

155 Cong Rec H11623-01, 2009 WL 3398976 (Oct 22, 2009).

It is clear that the representative from Washington was specifically referring to *Espinoza*.

Although the Oregon Legislature has not updated ORS 316.127(10) to mirror the text of the

federal law, OAR 150-316-0185 now makes clear that Oregon "exempts Oregon source income

of nonresidents to the extent provided under federal law[.]" The rule no longer limits the

---

[5] Congressman from the state of Washington.

exemption to vessels on the Columbia and Snake rivers, and the examples have been updated to reflect the clarified federal law. Thus, in Example 3, all of the income earned by Remy, whose vessel plies the Columbia and Willamette rivers, will be subject to exemption; he is no longer required to apportion his income between time spent on each river. Similarly, Example 2 no longer distinguishes between the time Kirk spends navigating the Columbia River and the time he spends docked on the Oregon shore. In the updated Example 2, Kirk spends two hours per day maintaining mill equipment and performing other tasks in a saw mill. Presumably Kirk is not being paid as a pilot while he works in the mill; therefore, the exemption does not apply.[6]

D.      *Application to Niemela*

The department's argument in this case is premised on the idea that the taxpayer qualified for the exemption only while he was working on board a vessel that was actively operating, *i.e.*, dredging, on the Columbia River. Defendant exempted Niemela's earnings for weekday work during the dredging season, but subjected them to Oregon taxation for weekend maintenance he performed while docked on the Oregon side of the Columbia River. That day by day parsing of Niemela's duties and pay for performing work while the boat was docked on the Columbia River is not supported by the federal legislative history; nor is it supported by the current state administrative rule. The department's argument is based in part on the court's reasoning in

---

[6] This example is defensible if one assumes that Kirk is doing work that is unrelated to his work as an interstate waterway worker. On the other hand, the department seems to read this rule in this case as supporting its position that work along the Oregon shore does not qualify for exemption. (*See* Def's Closing Statement at 2.) But were that still the case, the previous Example 2, where Kirk's work while docked in Oregon was not exempt, would provide a clearer example. The fact that the department changed that example suggests it has also changed its view of the law. Disallowing the exemption where the worker is not being paid for work that relates to interstate water travel is consistent with section 11108(b), which exempts "compensation for the performance of duties," that relate to interstate travel on waterways. However, requiring workers to distinguish between onboard and onshore duties, especially if those duties were *de minimis*, would be inconsistent with the legislative intent. *See* State of Connecticut, Ruling No. 2002-1, 2002 WL 984811, at *2 (Mar 26, 2002) (*de minimis* onshore duties of nonresident ferry workers were exempt).

*Davis*: only a worker on a vessel that was actively operating on a river like the Columbia would qualify for the exemption. (*See* Def's Closing Statement at 3.) The court in *Davis* explained, without citation, that the purpose of ORS 316.127(10) was to provide an exemption for times when it would be difficult to track which state a vessel was operating in.

The history of section 11108(b) demonstrates that Congress *was* concerned with the difficulties of tracking worker locations on rivers like the Columbia. However, that administrative concern was just one facet of the problem Congress sought to address. Congress was chiefly concerned with the burden and perceived unfairness of subjecting waterway workers to income tax in multiple states, especially since Congress had already alleviated that burden for other types of interstate workers. The concern with fairness and avoiding multiple taxation is evident from statements by legislators and the House and Senate reports. *See, e.g.*, S Rep No 106-421, 106th Cong, 2d Sess (2000) ("The bill will amend section 11108 of title 46, United States Code, in order to prevent merchant mariners who perform duties on the navigable waters of more than one state from being taxed in multiple jurisdictions."); Statement of Senator Gorton, 145 Cong Rec S4257-02, 1999 WL 245564 (Apr 27, 1999) ("This legislation will ensure that transportation workers who toil away on our nation's waterways receive the same tax treatment afforded their peers who work on the nation's highways, railroads, or navigate the skies."). Also clear is that Congress was focused primarily on the workers' status generally, *i.e.*, whether their jobs regularly required them to travel between states and was less concerned with the activities of the vessel they worked on at any given moment. *See* H Rep No 111-303 Part 1, at 136, 111th Cong 1st Sess (2010) (the 2010 amendment "limits State jurisdiction to tax worker crewmembers on vessels that regularly work on the navigable waters of two or more States; workers would only be taxed in one State."). As Representative Baird explained, "States are

prohibited from taxing the income of a nonresident interstate waterway worker, *period*." 155 Cong Rec H11623-01 (emphasis added). Allowing workers to claim the exemption while a vessel is "actively operating," but denying the exemption when the vessel is idle or undergoing weekend maintenance docked on one side of a river, would frustrate that goal. Workers would still be subject to taxation in multiple states, and workers would be faced with the additional burden of tracking and apportioning their time. It does not appear that Congress intended such a result.

The legislative history of section 11108(b) also demonstrates that Congress viewed the protections for waterway workers on par with exemptions for other interstate transportation workers, such as those set out in the Amtrak Act. It should be noted that those exemptions apply to *employees* who perform regularly assigned duties in two or more states. *See* 49 USC 14503. The fact that Congress updated section 11108(b) to mirror the Amtrak Act, in direct response to *Espinoza*, is further evidence that Congress intended section 11108(b) to shield waterway workers from multi-state taxation in the same way that laws like the Amtrak Act do. Thus, the question to be asked under section 11108(b) should be whether a worker had regularly assigned duties on a vessel that was engaged in interstate activity, not whether the vessel was "operating" on any given day.

Moreover, the current OAR 150-316-0185 further calls into question the department's position. Recall that a prior version of the rule included an example where "Kirk" was allowed an exemption for the time his vessel spent plying the Columbia, but not for the time he spent on board the vessel while it was docked on the Oregon shore. That example has since been changed; although, now Kirk leaves his vessel and works in a sawmill. That change to the rule suggests that the department updated its interpretation of the statutes to be consistent with the

2010 changes to section 11108(b). Example 1 provides further support; it states that "Ben" is exempt for the work he performed on board a dredging platform operating on the Willamette and Cowlitz rivers. It appears to be enough that the dredge was operating in two states (in Oregon, on the Willamette, and in Washington, on the Cowlitz) to allow Ben the exemption. Nowhere does the current rule distinguish between "active" operations on a vessel and times when the vessel sits idle.

In addition, although the 2010 amendment was in direct response to *Espinoza*, by clarifying its intent, Congress also undercut the rationale for *Davis*. Recall that *Davis* was premised on the idea that the legislature wanted to provide an exemption for times when it would be difficult to determine which state a vessel was operating in. However, since 2010, it has been clear that the exemption applies even on purely intrastate waters like the Willamette River. In such cases, there is no question as to what state the vessel is located in, yet the exemption still applies. It is because the vessel is engaged in interstate activity that gives rise to the exemption.

In summary, section 11108(b) should be read to apply to workers with regularly assigned duties on vessels that travel between two or more states during the relevant period. Niemela was paid as a crew member of a dredge that operated on the Columbia River between Washington and Oregon during the tax year. Thus, his pay as a crew member should be exempt, regardless of whether the vessel was actively dredging or not.

/ / /

/ / /

/ / /

/ / /

/ / /

E.     *The Amount of Niemela's Exemption*

Having found that Niemela's income during the dredging season is exempt, the court must still address the exact calculation of Niemela's Oregon income.[7] That is so because Plaintiffs did not provide sufficient evidence on how they arrived at their Oregon taxable income stated on their return at $32,381 (Ex F at 3), and Defendant's spreadsheet calculations were based on the erroneous assumption that Niemela's weekend work during dredge season should not be exempt. Based on the above analysis, the court finds that Niemela was performing regularly assigned duties while engaged as a crewman on a vessel operating on navigable waters in two or more states during the dredging season. Niemela should not have to parse his time hour by hour depending on the work he performed as long as his work, day to day, and week to week consisted of regularly assigned duties aboard the dredge. Consequently, the court starts with Defendant's calculation of exempt income Niemela earned from dredging as found in Exhibit C, and also adds the wages from his weekend maintenance work as shown in Attachment 1. Putting those figures together, the court finds that Niemela's Oregon taxable wages for the 2014 tax year were $46,723.79.

F.     *Travel Deduction*

Defendant denied Plaintiffs' vehicle expenses due to a lack of substantiation and on the theory that "the mileage appears to be personal commuting mileage to Mr. Niemela's principle [sic] place of business [and] daily transportation expenses incurred in going between your

---

[7] The interesting question of whether all of Niemela's earnings should be exempt or merely those earned during the dredging season is not decided by this court because it was not raised. The legislative history of section 11108(b) suggest that Congress intended to broadly exempt interstate workers. On the other hand, despite Congress's expressed intent to focus on all waterway workers, the text of section 11108(b)(1) does limit the exemption to "compensation for the performance of duties." Thus, at least some focus on the work being done by waterway workers seems appropriate. *See Mendoza v. Dept. of Rev.*, TC-MD 150516C, WL 4925101, at *7 (Or Tax M Div, Sept 14, 2016) (distinguishing between law enforcement activities while on "boat patrol" on the Columbia versus on dry land).

residence and your Portland/Vancouver metropolitan area work location are nondeductible commuting expenses. (Rev. Rul. 99-7)" (Def's Closing Statement at 3.)

Travel expenses are subject to strict substantiation rules under IRC section 274(d). Although the court often engages in an extended discussion about mileage substantiation, it is not necessary in this case. Plaintiffs provided a detailed log of work location from Niemela's employer. That log was corroborated by Niemela's testimony. Thus, the court finds Plaintiffs' mileage expenses are sufficiently substantiated. The more difficult question is whether the mileage is deductible under IRC section 162.

IRC section 162(a) allows deductions for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business[.]" Conversely, IRC section 262(a) disallows deductions for "personal, living, or family expenses." Generally, a taxpayer cannot deduct the cost of commuting between the taxpayer's residence and the taxpayer's place of business, except when the taxpayer travels "away from home in the pursuit of a trade or business[.]" IRC § 162(a)(2); Treas Reg § 1.162–2(e); *Comm'r v. Flowers*, 326 US 465, 66 S Ct 250, 90 L Ed 203 (1946).

In *Bogue v. Comm'r*, the tax court succinctly identified three exceptions to the commuting rule cited above:

> "The first exception is that expenses incurred traveling between a taxpayer's residence and a place of business are deductible if the residence is the taxpayer's principal place of business (home office exception). The second exception is that travel expenses between a taxpayer's residence and temporary work locations outside of the metropolitan area where the taxpayer lives and normally works are deductible (temporary distant worksite exception). The third exception is that travel expenses between a taxpayer's residence and temporary work locations, regardless of the distance, are deductible if the taxpayer also has one or more regular work locations away from the taxpayer's residence (regular work location exception)."

///

*Bogue v. Comm'r*, 102 TCM (CCH) 41 (TC 2011) at *6, *aff'd*, 522 Fed Appx 169, 2013-1 US Tax Cas ¶ 50354 (3d Cir 2013).

The first exception does not apply because Niemela did not assert his principal place of business was his residence. The second exception for temporary work locations outside the metropolitan areas where the taxpayer works and lives is problematic. No evidence was presented at trial to establish the metropolitan area where Niemela works and lives. That is especially troublesome in this case because he lives in Cathlamet, Washington, which is not close to any designated metropolitan area or even any major population center. Niemela commuted for much of the year to his employer's yard located in Portland; more than 70 miles each way from his home. Another nearby city and work location is in Astoria which, the court takes judicial notice, is over 50 miles from Plaintiffs' residence by highway. If a taxpayer does not ordinarily work in the metropolitan area in which he resides, transportation expenses to travel to temporary job sites in other metropolitan areas are nondeductible commuting costs. *Aldea v. Comm'r*, 79 TCM (CCH) 1917 (TC 2000). It is possible that, because Niemela resides in such a remote location, that other locations where he goes to work are outside of the metropolitan area. However, unlike other commuter cases which are closer to well-defined metropolitan areas, the court cannot take judicial notice of any particular fact to reach a result in this case. *See, e.g. Balvaneda v. Dept. of Rev.*, TC-MD 160156R, WL 384418 (Or Tax M Div Jan 25, 2017). In other words, if going to a worksite in Portland is within his metropolitan area, then probably the remainder of the worksites he commutes to along the Columbia River are also within his metropolitan area because they are all in closer proximity to his residence, and the second exception does not apply. If Portland is not within his metropolitan area, then he does not live and work within the same metropolitan area, and the second exception also does not apply. As

explained in *Bogue*, the policy behind that exception is to cover long commuting expenses when taxpayers commute for business, rather than personal reasons. Niemela did not present evidence of the business purpose of residing more than 70 miles from Portland. The court is unable to find the second exception is applicable in this case.

The third exception is the "regular work location" exception found in Rev Rul 99-7, 1991-1 CB at 362, which states: "If a taxpayer has one or more regular work locations away from the taxpayer's residence, the taxpayer may deduct daily transportation expenses incurred in going between the taxpayer's residence and a temporary work location in the same trade or business, regardless of the distance." Rev Rul 99–7 does not define "regular work location," but the US Tax Court inferred that the term should have the same meaning as "regular place of business" as defined in Revenue Ruling 90–23, 1990–1 CB 28, 1990 IRB LEXIS 99 (Jan 1990) (Rev Rul 90–23). *Bogue*, 2011 Tax Ct Memo LEXIS 164 at \*36. Rev Rul 90–23 defines "regular place of business" as "any location at which the taxpayer works or performs services on a regular basis." The US Tax Court also inferred that the terms "regular work location" and "temporary work location" are mutually exclusive because they are contrasted with one another in Rev Rul 99–7. *Id.* For purposes of both Rev Rul 90–23 and Rev Rul 94–47, a *temporary* work location is defined as any location at which the taxpayer performs services on an irregular or short-term (*i.e.*, generally a matter of days or weeks) basis. In *Bogue*, the taxpayer normally worked only at temporary locations in one metropolitan area and was unable to establish that he performed work on a regular basis at any particular location. *Id.* at \*38. Because the taxpayer had no regular work location, the court held that the taxpayer did not qualify for the third exception of Rev Rul 99–7. No evidence was presented to show that Niemela had any regular work locations, rather, they all appear to meet the definition of temporary work locations.

Ultimately, the court concludes that Niemela's commuting expenses are not deductible based on the evidence presented.

### III.  CONCLUSION

The legislative history of section 11108(b) shows that Congress intended to shield interstate waterway workers from taxation in multiple states in a manner consistent with federal exemptions for other interstate transportation workers.  In response to a narrow interpretation of the law by the Magistrate Division, Congress amended section 11108(b) to clarify that the exemption applied even when vessels could be found on intrastate waters.  Consequently, the department's position—that the vessel must be actively operating, not docked or moored—is incorrect.  Instead, all of the taxpayer's income during the dredging season seems to fit within the exemption.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part and denied in part.

IT IS FURTHER DECIDED that Plaintiffs' taxable earnings in this state for the 2014 tax year were $46,723.79.  Defendant shall make the appropriate adjustments to principal and interest.

IT IS FURTHER DECIDED that Plaintiffs' deduction for travel mileage is denied.

Dated this ____ day of May 2019.

_____
RICHARD DAVIS
MAGISTRATE

*If you want to appeal this Final Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of the Final Decision or this Final Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Magistrate Richard Davis and entered on May 2, 2019.*

Niemela Worksheet

| Date | hours | Rate | total | |
|---|---|---|---|---|
| 6/21/2014 | 8.7 | 55.82 | $ | 485.63 |
| 6/28/2014 | 8 | 37.28 | $ | 298.24 |
| 6/29/2014 | 13 | 55.82 | $ | 725.66 |
| 7/5/2014 | 8 | 55.82 | $ | 446.56 |
| 7/6/2014 | 9.2 | 55.82 | $ | 513.54 |
| 7/13/2014 | 8.7 | 74.56 | $ | 648.67 |
| 7/19/2014 | 8.5 | 55.82 | $ | 474.47 |
| 7/20/2014 | 8.8 | 74.56 | $ | 656.13 |
| 7/26/2014 | 8 | 55.82 | $ | 446.56 |
| 7/27/2014 | 8.5 | 74.56 | $ | 633.76 |
| 8/2/2014 | 8.8 | 55.82 | $ | 491.22 |
| 8/3/2014 | 8.5 | 74.56 | $ | 633.76 |
| 8/10/2014 | 8.3 | 74.56 | $ | 618.85 |
| 8/16/2014 | 12.2 | 55.82 | $ | 681.00 |
| 8/17/2014 | 8.2 | 55.82 | $ | 457.72 |
| 8/23/2014 | 8.3 | 55.82 | $ | 463.31 |
| 8/24/2014 | 8.4 | 74.56 | $ | 626.30 |
| 8/30/2014 | 1.1 | 74.56 | $ | 82.02 |
| 8/30/2014 | 8 | 55.82 | $ | 446.56 |
| 8/31/2014 | 8.5 | 74.56 | $ | 633.76 |
| 9/6/2014 | 8.3 | 55.82 | $ | 463.31 |
| 9/7/2014 | 8.2 | 55.82 | $ | 457.72 |
| 9/13/2014 | 8.8 | 55.82 | $ | 491.22 |
| 9/14/2014 | 8.7 | 74.56 | $ | 648.67 |
| 9/20/2014 | 7.8 | 55.82 | $ | 435.40 |
| 9/21/2014 | 8.7 | 74.56 | $ | 648.67 |
| 9/27/2014 | 8.6 | 55.82 | $ | 480.05 |
| 9/28/2014 | 8.5 | 55.82 | $ | 474.47 |
| 9/29/2014 | 8 | 37.28 | $ | 298.24 |
| 9/29/2014 | 0.7 | 55.82 | $ | 39.07 |
| 9/30/2014 | 8 | 37.28 | $ | 298.24 |
| 9/30/2014 | 0.7 | 55.82 | $ | 39.07 |
| 10/4/2014 | 8.6 | 55.82 | $ | 480.05 |
| 10/5/2014 | 8.8 | 74.56 | $ | 656.13 |
| 10/11/2014 | 8.6 | 55.82 | $ | 480.05 |
| 10/12/2014 | 8.7 | 55.82 | $ | 485.63 |
| 10/16/2014 | 8 | 37.28 | $ | 298.24 |
| 10/16/2014 | 0.4 | 55.82 | $ | 22.33 |
| 10/17/2014 | 0.3 | 55.82 | $ | 16.75 |
| 10/17/2014 | 8 | 37.28 | $ | 298.24 |
| 10/18/2014 | 8.2 | 55.82 | $ | 457.72 |
| 10/19/2014 | 8 | 55.82 | $ | 446.56 |
| 10/20/2014 | 8 | 37.28 | $ | 298.24 |
| 10/20/2014 | 0.6 | 55.82 | $ | 33.49 |

| Date | Hours | Rate | | Amount |
|---|---|---|---|---|
| 10/21/2014 | 8 | 37.28 | $ | 298.24 |
| 10/21/2014 | 0.8 | 55.82 | $ | 44.66 |
| 10/22/2014 | 8 | 37.28 | $ | 298.24 |
| 10/22/2014 | 0.6 | 55.82 | $ | 33.49 |
| 10/25/2014 | 9.2 | 55.82 | $ | 513.54 |
| 10/26/2014 | 8.5 | 74.56 | $ | 633.76 |
| 11/1/2014 | 8.7 | 55.82 | $ | 485.63 |
| 11/2/2014 | 8.7 | 74.56 | $ | 648.67 |
| 11/8/2014 | 8 | 55.82 | $ | 446.56 |
| 11/9/2014 | 8 | 55.82 | $ | 446.56 |
| 11/15/2014 | 8.3 | 55.82 | $ | 463.31 |
| 11/16/2014 | 8.4 | 74.56 | $ | 626.30 |
| 11/22/2014 | 8.3 | 55.82 | $ | 463.31 |
| 11/23/2014 | 8.2 | 74.56 | $ | 611.39 |
| 11/29/2014 | 8.1 | 55.82 | $ | 452.14 |
| 11/30/2014 | 8.1 | 55.82 | $ | 452.14 |
| 12/7/2014 | 8.4 | 55.82 | $ | 468.89 |
| 12/13/2014 | 8 | 55.82 | $ | 446.56 |
| 12/14/2014 | 8 | 55.82 | $ | 446.56 |
| 12/20/2014 | 7.8 | 55.82 | $ | 435.40 |
| 12/21/2014 | 8.4 | 55.82 | $ | 468.89 |
| | | Total | $ | 28,395.54 |
| | | Audit allo: | $ | 45,449.67 |
| | | Exempt | $ | 73,845.21 |

Calculations
Total Wages earned  $ 120,569.00
Waterway exemption  $  73,845.21

Oregon taxable  $  46,723.79
Oregon percent  38.75%